UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ELOUISE BRADLEY,

       Plaintiff,

v.                                       Case No. 15-cv-1384-pp

JENNIFER SABREE, JANE ABSHIRE,
REBECCA MCFADDEN, KARI KERBER,
GINGER KING, AND ROBIN RABER,

       Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DKT. NO. 13),
AND DENYING AS MOOT PLAINTIFF'S MOTION FOR A HEARING AND FOR
ORDER TO SHOW CAUSE (DKT. NO. 12); MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 15); AND AMENDED MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 17)**

---

Plaintiff Elouise Bradley, representing herself, filed a civil rights

complaint under 42 U.S.C. §1983, asserting claims arising under federal law

against defendants Jennifer Sabree, Jane Abshire, Rebecca McFadden, and

Kari Kerber,[1] who are employees of the Wisconsin Department of Children and

Families (the "DCF Defendants"), and Robin Raber and Ginger King, who are

employees of Lutheran Social Services of Wisconsin and Upper Michigan (the

"Non-DCF Defendants"). Dkt. No. 1. The allegations in the complaint relate to

the DCF's administrative actions that resulted in the closure of the plaintiff's

---

[1] The DCF Defendants identify defendant Kerber as "Kari" in their motion. It
appears to the court that the plaintiff misspelled Ms. Kerber's name in the
caption of the complaint. The court will order the clerk's office to correct this
defendant's name on the docket.

daycare business and the surrender and/or revocation of her child care license in 2012.

This is the second federal case in which the plaintiff has sued defendants Sabree, Abshire, McFadden, Raber and King, and her third federal case related to the DCF's actions. For the reasons explained in this order, the court will grant the DCF Defendants' motion to dismiss, because the plaintiff's claims against defendants Sabree, Abshire and McFadden are barred by claim preclusion, and because the plaintiff failed to state a claim against any of the DCF Defendants. For the same reasons, the court will dismiss defendants King and Raber (who, it appears, have not yet been served), pursuant to 28 U.S.C. §1915(e)(2). The court will deny as moot the plaintiff's motion for a hearing and her motions for summary judgment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Allegations of the Complaint

The plaintiff ran a daycare center at the times relating to the complaint. She states that around April 17, 2012, business was slow, and that she asked defendant Abshire (who apparently worked at the Department of Children and Families) to change her hours, so that she could work outside the home and take some classes. Dkt. No. 1 at 3.

The plaintiff alleges that in May 2012, "the defendant" (she does not say which one) e-mailed her about some classes that the plaintiff might be interested in. As a result, on May 19, 2012, the plaintiff received her first certificate from "4-C-Community Child Care, Inc." [likely Community

Case 2:15-cv-01384-PP   Filed 03/18/16   Page 2 of 23   Document 21

Coordinated Child Care, Inc., also known as "4-C," an advocacy and support service for child care in several Milwaukee counties] for completing a seven-hour class in continuing education. Id. On June 28, 2012, she took more classes on child abuse and child neglect. Id.

The plaintiff alleges that, around 7:15 in the morning on July 24, 2012, defendants Abshire and Jennifer Sabree (who also worked for the Department of Children and Families) visited her home in Milwaukee at 2430 W. Finn Place, where the plaintiff operated the daycare business. Id. at 2. She alleges that there was no reason for Sabree and Abshire to visit her so early, because the center was on summer break, there were no children present, and the plaintiff was doing remodeling work with assistance from her children. Id. The plaintiff claims that defendant Sabree began taking pictures of the center. Id. According to the plaintiff, defendant Sabree also threatened to revoke the plaintiff's child care license if the plaintiff did not surrender it. Id. The plaintiff alleges that her own child, J.P., gave the plaintiff's license to defendant Sabree, in the hopes that Sabree and Abshire would leave. Id. She alleges that defendants Sabree and Abshire subsequently called "C.P.S. [Wisconsin Child Protective Services] saying I surrender my license because of child abuse and neglect." Id. at 3.

The plaintiff also alleges that on this same date, defendant Abshire contacted Community Coordinated Child Care, Inc. and informed them that the plaintiff's child care center was closed. Id. The plaintiff alleges that as a result of this, she could not continue taking classes at 4-C. She alleges that Sabree

3

and Abshire changed her profile and "unregulated" her information, and that they had been accusing her of running an illegal daycare since 2003-2012. Id. at 3-4.

The complaint goes on to allege that the following day—July 25, 2012, defendant Rebecca McFadden from the Bureau of Child Welfare visited her home "to tell about I was running an illegal daycare and I needed to be license." Id. at 4. She further alleges that on July 30, 2012 and August 23, 2012, "CPS try to accuse [me] of child abuse and child neglect when CPS interview my 14 year old son without my permission around June 2012. While he was in detention for P.O. violation." Id. She does not allege any facts about how, if at all, defendant McFadden's conduct related to the CPS investigation. Id. She alleges only that McFadden "knew something" was wrong with her "CPS report," but that McFadden did not tell Sabree that the plaintiff had not abused her son. Id.

The allegations the plaintiff brings against defendant Kari Kerber, also a Bureau of Child Welfare employee, are somewhat less clear. The plaintiff alleges that in March of 2012, someone called the CPS hotline and stated that the plaintiff was neglecting her son, and that he could not get into her house. Id. at 5. The plaintiff states that the "department" failed to follow up on this allegation until the year 2014. Id. She indicates that around June of 2012, her son "was told" (she does not say by whom) to leave the plaintiff's home and return to his birth mother (the plaintiff indicates that her son is adopted). Id. She alleges that she told defendant Kerber that the "department" never had

4

followed up with "my March 2012 complaint from someone who" knew defendant Sabree. Id. She states that her daycare was closed "from the statement that my son told CPS without letting me know." Id.

The plaintiff also makes somewhat confusing claims against Non-DCF Defendants Raber and King (who worked for Lutheran Social Services). Id. She alleges that after her foster care license was revoked in 2004 on the grounds of child abuse and neglect, she requested a hearing, and won her case. Id. According to the complaint, "Judge Kenneth D. Duren ordered the defendants to give me a temporary foster care license so I came adoption L.A. age 2." Id. She claims that, after defendant Sabree wrongly closed her daycare center (based on what she alleges was false information that she could not provide food and shelter for L.A.), defendant Raber "left my case unreversed and I being accuse of child abuse and child neglect since 2004." Id. at 5-6. She alleges that defendants Raber and King violated her "Federal Right to Privacy" by "assisting in the use of information known to be false in order to close down" the plaintiff's child care business. Id. at 6. Beyond that, the complaint contains no further allegations explaining how the Non-DCF Defendants' conduct relates to the closure of her daycare business.

Invoking 42 U.S.C. §§1983 and 1985, the plaintiff claims that the defendants violated her rights under the "Federal Right to Privacy Act," the Child Abuse Prevention and Treatment Act, the 4th and 14th Amendments, and the Due Process Clause. Id.

5

B.    Procedural History

In her first federal case relating to the closure of her daycare operation, the plaintiff sued the Wisconsin Department of Children and Families. Bradley v. Wis. Dep't of Children & Families, No. 12-cv-1244 (E.D. Wis.) ("Bradley I"). That case was assigned to Judge Randa. Judge Randa dismissed the plaintiff's complaint for lack of subject matter jurisdiction, because he found that the DCF was entitled to sovereign immunity. Bradley v. Wis. Dep't of Children & Families, 528 F. App'x 680, 681 (7th Cir. 2013). The Seventh Circuit affirmed Judge Randa's dismissal order on different grounds, holding that the DCF was not a "person" that could be sued under §1983. Id.

The plaintiff filed her second case against most of the same defendants she named in this case—defendants Sabree, Abshire, McFadden, King, and Raber. Bradley v. Sabree, No. 14-cv-429 (E.D. Wis.) ("Bradley II"). That case was assigned to Judge Stadtmueller, who dismissed the plaintiff's complaint. As to defendants Sabree, Abshire, and McFadden, Judge Stadtmueller held that (1) "any challenge to the agency's administrative action must be brought in accordance with Chapter 227's provisions," and (2) the plaintiff failed to state a plausible claim for relief. Bradley II, Order at 4, Aug. 12, 2014, Dkt. No. 23. Judge Stadtmueller dismissed the plaintiff's claims against defendants King and Raber because he determined that the complaint failed to state any claim against them. Id. at 5-6. The Seventh Circuit affirmed Judge Stadtmueller's dismissal order. Bradley v. Sabree, 594 F. App'x 881 (7th Cir. 2015). The United States Supreme Court denied her petition for a writ of certiorari.

6

<u>Bradley v. Sabree</u>, No. 15-124, 136 S. Ct. 239 (Oct. 5, 2015), and her petition for rehearing. <u>Bradley v. Sabree</u>, No. 15-124, 136 S. Ct. 528 (Nov. 16, 2015).

Four days later, on November 20, 2015, the plaintiff filed the current complaint. Defendants Sabree, Abshire, McFadden, and Kerber (the DCF Defendants) waived service. It does not appear that defendants King and Raber (the Non-DCF Defendants) have yet received service. Before the DCF Defendants responded to the complaint, the plaintiff filed a Motion for Hearing and Order to Show Cause, in which she listed the various past forums and cases in which she has sought to challenge the agency's revocation of her daycare license, including <u>Bradley I</u> and <u>Bradley II</u>. Dkt. No. 12. In that motion, the plaintiff explained that she "is bringing [her] case back to this court For Judge Pamela Pepper to resolved some legal issues with DCF, BMCW, DHFS and the defendant(s) to rule on the applicability of the agency's policies and procedures . . . ." <u>Id.</u> at 1.

The DCF Defendants have moved to dismiss the plaintiff's complaint, arguing that (1) her claims are barred by claim preclusion and issue preclusion, (2) her allegations fail to meet the pleading standards set forth in Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, (3) this court lacks subject matter jurisdiction over a civil action challenging a decision issued by a Wisconsin administrative agency, and (4) her claims against the DCF Defendants are barred by qualified immunity. Dkt. No. 14.

Following the DCF Defendants' motion to dismiss, the plaintiff filed a motion for summary judgment (Dkt No. 15), and an amended motion for summary judgment (Dkt. No. 17). The parties' motions are ripe for review.

## II. DISCUSSION OF MOTION TO DISMISS

A. <u>Standards of Review</u>

### 1. *Screening A Complaint Filed By An Unrepresented Plaintiff*

Section 1915(e)(2)(B) requires a court to dismiss a case filed by a self-represented plaintiff at any time if the court determines that it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." For this reason, district courts "screen" complaints filed by self-represented plaintiffs, such as the plaintiff in this case, to determine whether the complaint must be dismissed under these standards.

A district court may rely on an affirmative defense, such as claim preclusion, that is "apparent and unmistakable" from the face of the complaint and the documents in the district court's possession to dismiss a case at the screening stage. <u>Briggs-Muhammad v. SSM Healthcare Corp.</u>, 567 F. App'x 464, 464-65 (7th Cir. 2014) (citing <u>Gleash v. Yuswak</u>, 308 F.3d 758, 760–61 (7th Cir. 2002)). In these "circumstances there [is] no point to serving the defendants with process, forcing them to engage counsel, and then waiting for the inevitable motion to dismiss on preclusion grounds. It [is] sensible to stop the suit immediately, saving time and money for everyone concerned." <u>Gleash</u>, 308 F.3d at 760-61.

8

## 2. *Pleading Standards Under Federal Rules of Civil Procedure 8 and 12*

Rule 8 sets forth the liberal requirements of federal notice pleading. To state a claim for relief, the complaint must contain a short and plain statement "of the grounds for the court's jurisdiction, . . . the claim showing that the pleader is entitled to relief, . . . and a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). In this context, "plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." Carlson v. CSX Transp., Inc., 758 F.3d 819, 826-27 (7th Cir. 2014) (quoting Swanson v. Citibank, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010)). "[T]he proper question to

9

ask is still could these things have happened, not did they happen." Id. at 827 (internal quotation and citation omitted). The plaintiffs "need not 'show' anything to survive a motion under Rule 12(b)(6)—[they] need only allege." Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

### 3. *Claim Preclusion*

Under the doctrine of claim preclusion, otherwise known as *res judicata*, a final judgment on the merits of an action precludes the parties from re-litigating issues that were or could have been raised in the prior action. Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411 (1980). In general, "[t]he doctrine of res judicata (claim preclusion) requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." Perkins v. Bd. of Trs. of the Univ. of Ill., 116 F.3d 235, 236 (7th Cir. 1997). Under federal law, the three requirements of claim preclusion are (1) an identity of parties or their privies; (2) an identity of causes of action; and (3) a final judgment on the merits. Cent. States, Se. & Sw. Areas Pension Fund v. Hunt Truck Lines, Inc., 296 F.3d 624, 628 (7th Cir. 2002). When these three elements are satisfied, the judgment in the earlier case bars litigation of issues that were either raised or could have been raised in the earlier case. Kratville v. Runyon, 90 F.3d 195, 197-98 (7th Cir. 1996).

Although claim preclusion ordinarily "is not one of the affirmative defenses that Rule 12(b) permits to be made by motion rather than in the answer to the complaint," the court may rely on an affirmative defense, such as claim preclusion, that is obvious from the face of the complaint and the

documents in the district court's possession. <u>Muhammad v. Oliver</u>, 547 F.3d 874, 878 (7th Cir. 2008); <u>Gleash</u>, 308 F.3d at 760–61; <u>Walker v. Thompson</u>, 288 F.3d 1005, 1009-10 (7th Cir. 2002).

B.   <u>The Plaintiff's Claims Against Defendants Sabree, Abshire, McFadden, King, and Raber Are Barred by Claim Preclusion</u>

The court finds that the plaintiff's claims against defendants Sabree, Abshire, McFadden, King and Raber meet all three of the criteria for claim preclusion: (1) this case involves the same parties as in <u>Bradley II</u>, (2) this case involves the same cause of action as in <u>Bradley II</u>, and (3) the litigation in <u>Bradley II</u> resulted in a final judgment on the merits.

*1.  These Five Defendants Were Named In <u>Bradley II</u>*

Defendants Sabree, King, Abshire, McFadden, and Raber each were named as defendants in the plaintiff's complaint in <u>Bradley II</u>. <u>Bradley II</u>, No. 14-cv-429, Dkt. No. 1.

*2.  This Case Involves the Same Cause of Action as <u>Bradley II</u>*

Where two cases arise from "a single core of operative facts giving rise to a remedy," the cases involve the same cause of action for purposes of claim preclusion. <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 789 F.2d 589, 593 (7th Cir. 1986). Put a different way, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." <u>Okoro v. Bohman</u>, 164 F.3d 1059, 1062 (7th Cir. 1999).

11

In this case, the plaintiff's allegations against the five defendants who also were named in Bradley II relate to the defendants' alleged involvement in the closure of her daycare business and the surrender or revocation of her license, as well as the plaintiff's attempt to challenge the DCF's administrative decisions. This is the same core of operative facts that gave rise to the plaintiff's complaint in Bradley II. In fact, the plaintiff expressly acknowledges that she "*is bringing [her] case back to this court*" to pursue issues that she raised in her prior case before Judge Stadtmueller. Dkt. No. 12 at 1 (emphasis added). In her new complaint, the plaintiff included some additional detail about the individual actions taken by the defendants, perhaps in response to Judge Stadtmueller's conclusion that the plaintiff "offers nothing to show that she has a plausible claim for relief." Bradley II, Order at 5, Aug. 12, 2014, Dkt. No. 23. But a comparison of the two complaints makes it clear that this case is based on the same "incident, events, transaction, and circumstances" at issue in the plaintiff's prior case—the revocation of the plaintiff's daycare license and the closure of her daycare business.

    *3.  The Dismissal Order in Bradley II Was a Final Judgment on the Merits*

Judge Stadtmueller's dismissal order was a "final judgment on the merits" for purpose of claim preclusion. "Generally, an order constitutes a final decision if it ends the litigation and leaves nothing to be decided in the district court." Edmonds v. Operating Eng'rs Local 139, 620 F. Supp. 2d 966, 973 (W.D. Wis. 2009) (citing Adams v. Lever Bros. Co., 874 F.2d 393, 394 (7th Cir. 1989)). "The test for finality is not whether the suit is dismissed with prejudice

or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground . . . [t]he test is whether the district court has finished with the case." Hill v. Potter, 352 F.3d 1142, 1144 (7th Cir. 2003).

Judge Stadtmueller's dismissal order leaves no doubt that he was finished with the case. His order reflects the two bases on which he determined that the plaintiff's claims could not proceed: (1) because "any challenge to the agency's administrative action must be brought in accordance with Chapter 227's provisions," and (2) because "Bradley's amended complaint, along with her materials submitted in opposition to the motions to dismiss, do not substantiate or specifically articulate any grounds upon which this court may grant any relief." Bradley II, Order at 4-5, Aug. 12, 2014, Dkt. No. 23. After Judge Stadtmueller entered his order, the plaintiff pursued her appellate rights. The Seventh Circuit affirmed Judge Stadtmueller's dismissal order, and the Supreme Court denied review. Now claim preclusion prevents the plaintiff from continuing to litigate claims that arise out of the DCF's closure of her daycare operation.

Because the plaintiff's claims against the five defendants named in Bradley II already have been litigated to finality in the federal courts, the court will grant the DCF Defendants' motion to dismiss on the basis of claim preclusion as to defendants Sabree, Abshire, and McFadden. Pursuant to §1915(a), the court also dismisses the plaintiff's claims against the two Non-DCF Defendants, because claim preclusion bars the plaintiff's claims against those defendants. The court recognizes that the plaintiff believes that she has

been wronged by the DCF and certain of its employees, but this court is not the place to redress those claims, and she cannot bring the same case back to this court (no matter which judge receives the case) over and over in the hopes of a different result.

C.    The Plaintiff's Complaint Fails to State a Claim on Which Relief Can Be Granted Against *Any* Defendant, Including Defendant Kerber.

The DCF Defendants contend that the plaintiff's claims against defendant Kerber—the only defendant named in this case who was not named in Bradley II—also should be barred by the preclusion doctrine, because she is in privity with her DCF co-defendants as a result of being an employee of the DCF. Dkt. No. 14 at 4 n.3. The DCF Defendants did not support this proposition with any authority.

Courts have held that employees of the same government are in privity with each other, when the defendant employees were sued in their official capacities as representatives of the government. E.g., Sunshine Coal Co. v. Adkins, 310 U.S. 381, 402-03, 60 S. Ct. 907 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government."); Micklus v. Greer, 705 F.2d 314, 317 (8th Cir. 1983) ("A plaintiff may not sue a succession of state employees on the same claim solely on the ground that each employee is not 'identical' to previously sued employees. There is added force for this holding . . . where all defendants were sued in their official

capacities . . . ."); <u>Church of the New Song v. Establishment of Religion</u>, 620
F.2d 648, 654 (7th Cir. 1980) ("since both suits were brought against
employees of the Federal Bureau of Prisons, the defendants in both cases are
in privity").

But it is not clear that a government employee sued in her individual
capacity is in privity with employees of the same government who were sued in
their *individual capacities* in a prior suit. See <u>Tartt v. Nw. Comm. Hosp.</u>, 453
F.3d 817, 822 (7th Cir. 2006) ("res judicata bars subsequent suits against
those who were not party to a prior suit if their interests are closely related to
those who were"); <u>Gray v. Lacke</u>, 885 F.2d 399, 405 (7th Cir. 1989) (privity
exists between a government entity and its employees when such employees
are sued in their official capacity).

The court cannot discern whether the plaintiff intended to sue the
defendants in <u>Bradley II</u> in their individual capacities, their official capacities,
or both. Judge Stadtmueller's dismissal order does not directly discuss that
issue. His order suggests that he believed the defendants had been sued in
their official capacities, because he interpreted the plaintiff's complaint as a
challenge to the DCF's administrative action. <u>Bradley II</u>, Order at 4, Aug. 12,
2014, Dkt. No. 23. The plaintiff also alleged that the defendants exceeded the
scope of their authority and injured her in other ways, such as defaming her
and causing her emotional distress, and the defendants in that case raised
qualified immunity. The defendants' invocation of qualified immunity strongly
suggests that the defendants believed they had been sued in their individual

15

capacities, "as 'it is well established that the qualified immunity doctrine does not apply to official capacity claims.'"). Sanville v. McCaughtry, 266 F.3d 724, 732 (7th Cir. 2001) (quoting Ruffino v. Sheahan, 218 F.3d 697, 700 (7th Cir. 2000)).

Neither the plaintiff, the defendants nor Judge Stadtmueller, however, clearly stated that the plaintiff had sued the Bradley II defendants *only* in their official capacities. Without clarity or specificity on that point, the court cannot find that defendant Kerber is in privity with the rest of the DCF Defendants for purposes of claim preclusion.

The court finds, however, that the complaint as to *all* of the defendants— including defendant Kerber—must be dismissed, because it fails to state a claim for which relief can be granted against any of the defendants. As in Bradley II, the plaintiff appears to be alleging that the defendants' actions resulted in the DCF's decision to close her daycare operations and to suspend or revoke her license, and that she thinks that this action was the result of false allegations of abuse or neglect. See generally, Dkt. No. 1 at 2-6. The complaint refers to five constitutional provisions and federal statutes, which she contends the defendants violated through their actions—the "Federal Right to Privacy Act," the "Child Abuse Prevention and Treatment Act 42 5106(a)," "4th and 14th Amendment rights violation," "Due Process Claim was violated by DCF, B.M.C.W," and 42 U.S.C. §§1983 and 1985(3). Id. at 7.

As an initial matter, the court notes the following: the plaintiff first lists the "Federal Right to Privacy Act." The court is not aware of such a statute, but

Case 2:15-cv-01384-PP   Filed 03/18/16   Page 16 of 23   Document 21

she might be referring to the Privacy Act of 1974, 5 U.S.C. §522(a), <u>et seq.</u>, which governs federal agencies' collection, use and dissemination of certain private information. The plaintiff makes no allegations in the complaint that a federal agency collected, used, maintained or disseminated information—all of her allegations related to Wisconsin agencies.

She next mentions 42 U.S.C. §5106(a), which the plaintiff refers to as the "Child Abuse Prevention and Treatment Act." This statute actually is a sub-chapter of the omnibus Child Abuse Prevention and Treatment and Adoption Reform bill. It relates to grants to states, tribes, and public or private organizations for training, triage, support, kinship care, etc. This legislation does not give rise to any private right of action for a citizen such as the plaintiff—it provides for procedures for the Secretary of the Department of Health and Human Services to give out grants.

She next references the Fourth Amendment—presumably to the United States Constitution. That Amendment protects against unreasonable searches and seizures. But the plaintiff makes no allegations that anyone conducted any unlawful searches or seizures.

She then references the Fourteenth Amendment, which covers a number of topics. The only provision of that amendment which might remotely be considered relevant is the Due Process Clause of section 1, but the plaintiff has not alleged that anyone deprived her of life, liberty or property without due process. She does mention due process in her next reference, but again, explains nowhere in the complaint how her due process rights were violated.

17

Finally, she refers to 42 U.S.C. §1983, which prohibits persons acting under color of law from violating the civil rights of others. But the complaint does not explain how any the defendants' alleged actions violated her civil rights. A complaint must contain enough information to raise a right to relief above the speculative level," Iqbal, 556 U.S. at 678, 129 S. Ct. 1937, and one that offers only "labels or conclusions" is not sufficient to state a claim on which relief can be granted. Twombly, 550 U.S. at 556, 127 S. Ct. 1955.

The complaint in this case does not allege enough facts to establish a plausible claim that any of the defendants violated the plaintiff's federal civil rights, in either their individual or official capacities. It offers only conclusions based on spare factual allegations, most of which do not concern the actual defendants. The court has liberally construed the plaintiff's complaint (as it is obligated to do), but the court cannot identify any plausible federal constitutional claims against the defendants based on the facts alleged in the complaint.

To be clear: the Constitution does not give a person the right to operate a daycare. The Constitution does not give a person the right to be free from allegations of abuse. The Constitution does not give a person a right to hold a daycare license. Even if the defendants in this case had refused or taken away the plaintiff's daycare license for no reason; even if they had closed down her daycare for no reason—these are not *Constitutional* violations. Section 1983—

18

the statute under which the plaintiff sued the defendants in this case—allows a court to hold liable a person who, while acting under color of law, violates another person's rights under the Constitution or laws of the United States. There is nothing in this complaint showing that any of these defendants violated any of the plaintiff's Constitutional or federal rights.

As Judge Stadtmueller noted in <u>Bradley II</u>, Chapter 227 of the Wisconsin statutes governs the procedures for granting, or taking away, the licenses of certain small businesses. While it is not clear, it may be that the plaintiff is trying to claim in this case that the DCF Defendants violated the procedures required by Chapter 227 in the way they revoked/refused her license, or in the way they shut down her daycare (if they did). If that is what she means to argue, she still has not alleged a violation of federal law or the U.S. Constitution. As the Seventh Circuit explained on appeal in <u>Bradley II</u>, "[i]t is well established that 'a state's violation of a state statute does not, as such, violate the federal Constitution.'" <u>Bradley v. Sabree</u>, 594 F. App'x 881, 883 (7th Cir. Mar. 2, 2015) (citing <u>Commonwealth Plaza Condo. Ass'n v. City of Chi.</u>, 693 F.3d 743, 749–50 (7th Cir. 2012) and <u>Domka v. Portage Cnty., Wis.</u>, 523 F.3d 776, 784 (7th Cir. 2008)).

If what the plaintiff *really* wants to challenge is the decision of the agency which shut down her daycare—perhaps to get her license back, or to be allowed to reopen her daycare—then she must follow the process outlined in Chapter 227 of the Wisconsin statutes. Federal court is not the place for her to do that.

The court will, therefore, dismiss the entire complaint under Fed. R. Civ. P. 12(b)(6), because the court cannot draw a reasonable inference that any of the defendants are liable to the plaintiff from the allegations in the complaint. Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).

## III.   THE PLAINTIFF'S MOTIONS

As indicated above, the plaintiff filed a motion for a hearing and an order to show cause, Dkt. No. 12, indicating that she was "bringing [her] case back to this court for Judge Pamela Pepper" to resolve the legal issues she'd raised. At the end of the motion, she asked the court to deny the DCF Defendants' motion to dismiss. Id. at 3. In a footnote, she informed the court that DCF had closed her center down in 2012 and revoked her license, but hadn't accused her of child abuse and neglect until February 2013. She also noted that she was 68 years old. Id. at 4.

The court has concluded, for the reasons stated above, that the plaintiff's allegation that DCF closed her down before accusing her of abuse and neglect does not state a claim upon which this court can grant relief. Accordingly, the court will deny her motion for a hearing and order to show cause as moot. Dkt. No. 12.

The plaintiff also filed a motion for summary judgment (after the defendants filed the motion to dismiss). Dkt. No. 15. The document itself is simply a notice of the filing of a motion for summary judgment; there is no argument, and there is no brief attached. Regardless, the court will deny the

motion for summary judgment because, as discussed above, the court has found that the plaintiff's complaint did not state a claim upon which the court could grant relief. The court cannot grant judgment, summary or otherwise, to a plaintiff who has not stated a claim.

Finally, the plaintiff filed an amended motion for summary judgment about a week after she filed the motion for summary judgment. Dkt. No. 17. Again, because the plaintiff has not stated a claim, the court will deny the second summary judgment motion.

## IV. CONCLUSION

The court finds that the doctrine of claim preclusion bars the plaintiff's claims against DCF defendants Sabree, Abshire and McFadden, and against non-DCF Defendants Raber and King.[2] The court also finds that the complaint fails to state a claim for which relief can be granted against any of the defendants.

Accordingly, the court **GRANTS** the DCF Defendants' motion to dismiss on the basis of claim preclusion as to defendants Sabree, Abshire and McFadden, and pursuant to Rule 12(b)(6) as to all four DCF defendants, and

---

[2] The DCF Defendants raised a number of other arguments for dismissal: issue preclusion, failure to satisfy the notice pleading standard set forth in Fed. R. Civ. P. 8, lack of subject matter jurisdiction, and qualified immunity. Dkt. No. 14 at 5-12. There is no need for the court to reach these additional grounds for dismissal, because it has found that claim preclusion bars all of the plaintiff's claims against the defendants Sabree, Abshire, McFadden, Raber, and King, and because it has found that the complaint fails to state a claim against any of the defendants.

Case 2:15-cv-01384-PP   Filed 03/18/16   Page 21 of 23   Document 21

**DISMISSES** the plaintiff's claims against Sabree, Abshire, McFadden and Kerber.

Pursuant to §1915, the court **DISMISSES** the plaintiff's claims against non-DCF Defendants King and Raber, because the plaintiff's claims against those defendants are barred by claim preclusion and because the complaint fails to state a claim against them upon which relief can be granted.

Because the plaintiff has not stated cognizable claims against any defendant, the court **DISMISSES** the plaintiff's complaint in its entirety.

The court **ORDERS** that the plaintiff's motion for hearing and motion for order to show cause is **DENIED**. Dkt. No. 12. The court further **DENIES** the plaintiff's January 19, 2016 motion for summary judgment. Dkt. No. 15. The court also **DENIES** the plaintiff's January 25, 2016 amended motion for summary judgment. Dkt. No. 17.

The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rules of Appellate Procedure 3 and 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief

22

from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 18th day of March, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

Case 2:15-cv-01384-PP   Filed 03/18/16   Page 23 of 23   Document 21